# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SORENSON IMPACT FOUNDATION and JAMES LEE SORENSON FAMILY FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>CONTINENTAL STOCK TRANSFER & TRUST COMPANY, TASSEL PARENT INC., and GRADUATION ALLIANCE, INC.,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 2021-0413-SG |

## MEMORANDUM OPINION

Date Submitted: December 9, 2021
Date Decided: April 1, 2022

Eric D. Selden and Anthony M. Calvano, of ROSS ARONSTAM & MORITZ LLP, Wilmington, Delaware; OF COUNSEL: Cameron M. Hancock and Adam D. Wahlquist, of KIRTON MCCONKIE, Salt Lake City, Utah, *Attorneys for Plaintiffs Sorenson Impact Foundation and James Lee Sorenson Family Foundation.*

Peter B. Ladig, of BAYARD, P.A., Wilmington, Delaware; OF COUNSEL: Mark A. Harmon and Erin N. Teske, of HODGSON RUSS LLP, New York, New York, *Attorneys for Defendant Continental Stock Transfer & Trust Company.*

P. Clarkson Collins, Jr. and K. Tyler O'Connell, of MORRIS JAMES LLP, Wilmington, Delaware; OF COUNSEL: Anna Rotman, of KIRKLAND & ELLIS LLP, Houston, Texas, *Attorneys for Defendants Tassel Parent Inc. and Graduation Alliance, Inc.*

**GLASSCOCK, Vice Chancellor**

Two parties contract for the sale of a chattel; say, a statuette of a falcon covered in black enamel.[1]  The payment is to be in cash.  Neither wishes to make the transfer in person.  Accordingly, they agree that the buyer will hire an agent who is to deliver the bird; once delivery is made, the agent is to receive cash from the buyer, which he is then to pay over to the seller.  The first part of the transaction is completed without incident.  The buyer immediately resells the dingus to new buyers,[2] who then take it aboard a ship and out of the jurisdiction.

The agent then departs with the cash.  As he is approaching the seller's home to complete the payment, a gunsel accosts him, and robs him of the cabbage.  This mugger, despite the subsequent best efforts of the police, is never apprehended or even identified.  Who in this scenario must bear the loss?

A similar *transaction noir* is alleged in the matter before me.  The Plaintiffs are former stockholders (and a noteholder) of a company purchased via merger.  They tendered their shares as called for in the merger agreement.  The Defendant buyer accepted the shares and directed its agent, also a Defendant, to make the required payment to the Plaintiffs.  Before payment was made, the Plaintiffs appeared to have indicated to the agent (through deal counsel) that they wished the funds sent to a different payee and address, that of a Hong Kong company.

---

[1] *See generally* THE MALTESE FALCON (Warner Bros. 1941).
[2] A fat man and his minions.

Unfortunately, the Defendant agent was unaware that this communication was in reality from hackers, who were ultimately successful in diverting the cash consideration to persons unknown. Thus the buyer received the stock, presumably cancelled as part of the merger, and has paid the cash consideration, but the sellers have delivered their shares without receiving payment. The Plaintiff sellers have sued the Defendant agent on grounds of tort and breach of contract. The Defendant agent seeks to dismiss on grounds of lack of personal jurisdiction, however, and I find that, indeed, *in personam* jurisdiction is lacking here.

The Plaintiffs also seek recovery for breach of contract by the Defendant buyer.[3] The buyer has moved to dismiss for failure to state a claim. It is true that the Plaintiffs' contractual complaint against the buyer is muddled and turbid. Under our liberal notice pleading requirements, however, and in light of the plaintiff-friendly stage of the proceedings, I find it reasonably conceivable that the buyer breached a payment obligation to the Plaintiffs in this scenario, arising under the merger agreement.

The buyer also seeks dismissal based upon failure to join a necessary party, the law firm (per the Defendant buyer) purportedly representing the seller,[4] who

---

[3] In addition, the Plaintiffs seek recovery against the Defendants buyer and acquired company on an unjust enrichment theory. As explained below, the motion to dismiss that equitable cause of action awaits a record.

[4] The question of whom the law firm represented is a disputed issue. *See* Pls. Sorenson Impact Foundation and James Lee Sorenson Family Foundation's Verified Am. Compl. ¶ 37, Dkt. No. 6 [hereinafter "Compl."] (identifying the law firm as counsel for the buyer); *see also* Opening Br.

allegedly communicated directly with the hackers.[5]  Because I have dismissed the Defendant agent on jurisdictional grounds, I will allow the parties to supplement briefing regarding the absence of the agent, as well.  In the meantime, decision on that portion of the motion is continued.

For the foregoing reasons, the motions of the Defendant buyer and of the Defendant acquired company to dismiss are denied, except as continued.  If the Plaintiffs are to recover against the Defendant agent,[6] however, it must be in a forum where jurisdiction exists.  My reasoning follows.

## I. BACKGROUND

The instant case deals with diverted merger consideration.  Tassel Parent Inc. sought to acquire Graduation Alliance, Inc. (the "Merger").[7]  The Plaintiffs in the action, Sorenson Impact Foundation and James Lee Sorenson Family Foundation (the "Plaintiffs") tendered Graduation Alliance, Inc. stock and convertible note holdings, along with a transmittal document called a letter of transmittal, to a paying

---

Supp. Defs. Tassel Parent Inc. and Graduation Alliance, Inc.'s Mot. to Dismiss Verified Compl. 14, Dkt No. 14 [hereinafter "Company Def. OB"] (identifying the law firm as counsel for the acquired company).

[5] The Plaintiffs previously brought a lawsuit in Utah against this law firm in connection with this same transaction; that suit has been voluntarily discontinued.  *See* Opening Br. Supp. Def. Continental Stock Transfer & Trust Co.'s Mot. to Dismiss Verified Compl. 4–5, Dkt. No. 16 [hereinafter "CST OB"].

[6] The agent, I note, also moved to dismiss for failure to state a claim, a motion I do not reach based on its demonstration that I am without jurisdiction.

[7] Compl. ¶ 1.

agent responsible for paying out merger consideration following the Merger's close.[8] After the Plaintiffs transmitted their legitimate documents, hackers intercepted their email communications, assuming the identity of the Plaintiffs, and communicated via email with unsuspecting legal counsel, ultimately seeking to have the Plaintiffs' letters of transmittal edited such that payment would be made to the hackers' bank accounts instead of the Plaintiffs' accounts.[9] The hackers were successful.[10] Following the failure to receive Merger consideration, the Plaintiffs bring suit against the paying agent (Continental Stock Transfer & Trust Company), Tassel Parent Inc., and Graduation Alliance, Inc. (together, the "Defendants") for various claims, including breach of contract, unjust enrichment, negligence, and breach of fiduciary duty.[11] The Defendants have moved to dismiss in two separate motions. This Memorandum Opinion grants the paying agent's motion to dismiss, but denies the joint motion of Tassel Parent Inc. and Graduation Alliance, Inc. A fuller recitation of the facts is outlined below.

---

[8] *See id.* ¶¶ 2–3.
[9] *Id.* ¶ 5.
[10] *Id.* ¶ 4.
[11] *See generally* Compl.

4

*A. Factual Overview*[12]

### 1. The Parties and Relevant Non-Parties

The Plaintiffs were stockholders of Graduation Alliance, Inc. at all pertinent times.[13] Plaintiff Sorenson Impact Foundation also held a convertible note issued by Graduation Alliance, Inc. prior to the Merger.[14]

Defendant Graduation Alliance, Inc. ("Target") was a Delaware corporation purchased by Defendant Tassel Parent Inc., a Delaware corporation ("Parent" and, together with Target, the "Company Defendants"), in the Merger.[15] Per the merger agreement (the "Merger Agreement"), Target was merged into a subsidiary of Parent and remains as the surviving corporation.[16]

Defendant Continental Stock Transfer & Trust Company ("CST" or the "paying agent") is the paying agent hired by Parent to help with certain logistics in closing the Merger.[17] CST is a New York corporation.[18]

---

[12] Unless otherwise specified, the facts in this section are drawn from the verified amended complaint (the "Complaint") or exhibits attached to the Complaint. *See generally id*. I consider the facts to be true as pled in the Complaint, in accordance with the applicable standard on a motion to dismiss. This section therefore does not constitute formal findings of fact.

[13] *Id.* ¶ 19.

[14] *Id.* Although the Complaint here refers to plaintiff "Sorenson Impact," I have assumed that this discrepancy was a mere typographical error. *See id.*

[15] *Id.* ¶¶ 14–15, 20.

[16] *Id.* ¶ 20.

[17] *Id.* ¶¶ 24–25.

[18] *Id.* ¶ 13. The Complaint indicates that CST is a New York corporation "doing business in the State of Utah." *Id.*

5

The conflict in the instant case was caused by certain hackers (the "Hackers"), non-parties to this case, who intercepted the email communications of legal counsel involved with the Merger, and provided fraudulent bank information for the receipt of the Merger consideration.[19]

Exhibit A, attached hereto, provides a visual rendition of these relationships.

Non-party Holland & Knight LLP ("H&K") was counsel for the Merger.[20] The entity H&K represented is subject to dispute.[21]

### 2. The Transaction Documentation

The Merger Agreement requires the Plaintiffs to surrender their existing stock certificates to CST and to deliver an executed letter of transmittal ("LOT") to CST in order to receive their portion of the Merger consideration.[22] The Merger Agreement additionally specifies that Target is responsible for providing a "[c]onsideration [s]preadsheet" (which would outline the expected payments) to Parent three business days prior to the close of the Merger.[23]

---

[19] *See id.* ¶¶ 37–38, 45–49.

[20] *Id.*, Ex. A, § 13.7 [such exhibit hereinafter "MA"]. The Merger Agreement indicates that Parent's counsel (and Target's counsel following the consummation of the Merger) was Kirkland & Ellis LLP. *See id.*

[21] *See supra* note 4.

[22] *Id.* ¶ 22. The portion of the Merger Agreement discussed in the Complaint does not discuss the procedure for receiving consideration for the outstanding convertible note, so I assume without deciding that such process does not change the outcome here. *See id.*

[23] MA § 3.1(b)(i)(B). I also note as a matter of curiosity that the LOT identifies the consideration spreadsheet as the determinative document with respect to the amounts payable to the stockholders, rather than "Schedule A" described in the Paying Agent Agreement. *See* Compl., Ex. C, at 4 [such exhibit hereinafter "LOT"].

The Paying Agent Agreement includes a clause that disavows CST having any knowledge of the contents of the Merger Agreement.[24] The clause in question specifies that CST is "assumed to be wholly unfamiliar with, and not bound by" the Merger Agreement.[25]

The LOT includes certain instructions, which the Plaintiffs contend were "binding on the parties."[26] To repeat, Target stockholders were responsible for submitting their stock certificates along with a completed LOT to receive Merger consideration. The LOT additionally requires that, if a check or wire transfer were to be received by a stockholder in a name *other than* the name on the certificate, such certificate needed to be "properly endorsed," and that signature needed to be "medallion guaranteed" by a qualified guarantor.[27] A medallion guarantee confirms that "the signature authorizing the transaction is genuine and the signer has legal capacity and authority to sign the document."[28]

The LOT attaches the Merger Agreement as an exhibit,[29] and the Paying Agent Agreement, discussed below, attaches the LOT as an exhibit.[30]

---

[24] Compl., Ex. B, § 1.3 [such exhibit hereinafter "PAA"].
[25] PAA § 1.3.
[26] Compl. ¶ 31.
[27] *Id.*
[28] *Id.* ¶ 32.
[29] *See* LOT, Ex. A.
[30] *See* PAA, Ex. A. To be specific, the PAA attaches a "form of" the LOT. *See id.*

Both the Merger Agreement and the LOT are governed by the laws of Delaware and include forum selection clauses identifying Delaware courts as the appropriate forum for any litigation.[31]

In addition to the Merger Agreement and the LOT, another pertinent transaction document is the Paying Agent Agreement (the "PAA"), which enshrines the contractual duties owed to Parent by CST in its role as paying agent.[32] The PAA outlines that Parent will provide to CST "Schedule A," which includes a list of Target stockholders and noteholders to be paid in connection with the closing of the Merger.[33] Per the Plaintiffs' counsel at oral argument, this Schedule A was to be put together by Parent and CST "[p]resumably based on what Graduation Alliance provide[d]" in the consideration spreadsheet referenced above.[34]

The PAA specifies that, after Schedule A is provided to CST, Parent "shall work" with CST "to ensure the accuracy and completeness of Schedule A."[35] Any edits to be made to Schedule A "are to be made by Parent and delivered" to CST.[36]

Section 2.2 of the PAA further indicates the ways in which CST ensures the accuracy of the payment information:

---

[31] MA § 13.8; LOT at 5–6.
[32] *See* Compl. ¶ 24.
[33] PAA § 1.2(a).
[34] Tr. of 12.9.21 Oral Arg. on Defs.' Mots. to Dismiss, 37:17–24, 38:1–15, Dkt. No. 39 [hereinafter "Oral Arg."]. I have assumed that "Schedule A" and the "consideration spreadsheet" are separate documents based on this representation.
[35] PAA § 1.2(b).
[36] *Id.*

> The Paying Agent [CST] will examine the Letters of Transmittal, the share certificates and/or book-entry positions for shares delivered or mailed to the Paying Agent [CST] by [Graduation Alliance] stockholders to ascertain that (i) the Letters of Transmittal are properly completed and duly executed in accordance with the instructions set forth therein . . . .  In cases where the Letter of Transmittal has been improperly completed or executed . . . or if some other irregularity exists in connection with their surrender, the Paying Agent [CST] shall consult with Parent on taking such actions as are necessary to cause such irregularity to be corrected.[37]

Section 2.2 also provides that CST can waive an irregularity after review of the same with Parent and after approval in writing by certain designated officers or agents of Parent.[38]  Per the Complaint, no such written approval was provided.[39]

The PAA is governed by New York law.[40]

### 3. The Misdirected Merger Consideration

CST was provided with the funds owed to the Plaintiffs prior to January 30, 2020.[41]  The Plaintiffs returned their copies of the LOT, pertinent stock certificates, and convertible note to CST on or about January 30, 2020.[42]  The Plaintiffs also provided the "Defendants" with wire instructions directing their consideration to be paid to a bank account with Zions Bank in Utah.[43]

---

[37] *Id.* § 2.2.
[38] *Id.*
[39] Compl. ¶ 64.
[40] PAA § 4.11.
[41] Compl. ¶ 36.
[42] *Id.* ¶ 35.
[43] *Id.*  Defendants is included in scare quotes here as the Complaint is nonspecific with respect to the recipient of the wire instructions and may not apply to the defined term "Defendants" as used herein.  *See id.*  All further repetitions of the term "Defendants" in scare quotes are used in like manner.

After the Plaintiffs provided their legitimate LOTs to the "Defendants," the Hackers intercepted the email chains between the parties, sending fraudulent emails posing as the Plaintiffs, who were unaware of the interception.[44] The Hackers emailed H&K asking to change the "pay out account" for the Plaintiffs to "an international account in Hong Kong."[45] About a week later, on February 7, 2020, the Hackers sent an email containing a revised LOT, stock certificates, and an authorization letter updating the payment information to be paid into the Hong Kong bank account.[46] The new beneficiary to be paid out under the revised fraudulent documents was "Hongkong Wemakos Furniture Trading Co. Limited"—clearly a different name than either of the Sorenson holders.[47] Despite the instructions to the LOT, a medallion guarantee was not provided.[48]

On February 21, 2020, CST told H&K that the payment instructions required a medallion signature guarantee with respect to "the Sorenson accounts that provided different account names for the payment instructions."[49] The Complaint avers that the (nonspecific) "Defendants" discussed ways to circumvent the medallion

---

[44] *Id.* ¶¶ 37, 38.
[45] *Id.* ¶ 38 (quotations omitted).
[46] *Id.* ¶ 51.
[47] *Id.* ¶ 52. There were apparently multiple inconsistencies regarding the new name in the Hackers' communications, to boot. *See id.* at ¶¶ 52, 53, 55.
[48] *Id.* ¶ 54.
[49] *Id.* ¶ 57.

guarantee requirement and "finalize the documentation necessary to meet the closing date under the Merger Agreement."[50]  CST provided a few options:

> (a) Affix a Signature Medallion Guarantee to the Letter of Transmittal with banking instructions; (b) provide a letter of instruction from the authorized signatories provided in the Paying Agent agreement that will instruct to process the account and accept instructions without a Signature Medallion Guarantee. Note, the hold harmless language attached would need to be included in the instruction letter; (c) Modification of the payment schedule to change the name of the Sorenson accounts to be "Hongkong Wemakos Furniture Trading Co. LTD" as listed in the banking instructions. We would look to receive new IRS forms and complete tax reporting to this entity if this is completed; (d) Otherwise, we would look to make payment as the shares are registered.[51]

The "Defendants" allegedly chose option (c), modifying the "payment schedule" (presumably Schedule A) to change the name on the Plaintiffs' accounts to "Hongkong Wemakos Furniture Trading Co., LTD."[52]  In support of their argument that the "Defendants" were subject to a "time crunch" resulting in anti-contractual behavior, the Plaintiffs point out that the "Defendants" did not even consult the Hackers before making the change to the payment schedule.[53]  They further contend that editing Schedule A constituted an amendment to the Merger Agreement itself, which was invalid.[54]

---

[50] *Id.* ¶ 59.  I note that the closing date identified in the Merger Agreement (February 17, 2020) had already passed by the time CST raised this as an issue; the Merger Agreement also provided for a later closing date within two business days of satisfaction of applicable conditions.  *See* MA § 2.2.

[51] Compl. ¶ 60.

[52] *Id.* ¶ 67.

[53] *Id.*

[54] *See id.* ¶ 63; *see also* MA § 13.9.

11

In summary, no medallion guarantee was procured and no instruction letter was provided. Despite the instructions attached to the LOT, CST acquiesced and did not require further assurances once the payment schedule was updated to match the fraudulent LOT.[55] The Merger consideration due to the Plaintiffs was transferred to the Hackers' account on or around February 25, 2020.[56] To date, the funds have not been recovered.[57]

*B. Procedural History*

The original complaint in this case was filed on May 11, 2021, with the amended Complaint filed shortly after in June 2021.[58] The Defendants moved to dismiss in two separate motions on July 27, 2021.[59] CST filed a sworn declaration by its President in support of its motion to dismiss.[60]

I heard oral argument with respect to both motions to dismiss on December 9, 2021, and considered the matter fully submitted at that time.[61]

---

[55] *See* Compl. ¶ 69.
[56] *Id.*
[57] *Id.*
[58] *See* Pls. Sorenson Impact Foundation and James Lee Sorenson Family Foundation's Verified Compl. for Breach of Merger Agreement and Related Contracts, Dkt. No. 1; *see also* Compl.
[59] *See* Defs. Tassel Parent, Inc. and Graduation Alliance Inc.'s Mot. to Dismiss Verified Compl, Dkt. No. 14; Def. Continental Stock Transfer & Trust Co.'s Mot. to Dismiss, Dkt. No. 15.
[60] Decl. of Steven G. Nelson Pursuant to 10 *Del. C.* § 3927 Supp. Continental Stock Transfer & Trust Company's Mot. to Dismiss, Dkt. No. 16 [hereinafter "Nelson Decl."].
[61] *See* Oral Arg.

## II. ANALYSIS

The movants in the instant action raise differing bases for dismissal of the claims against them. CST raises lack of personal jurisdiction under Rule 12(b)(2) and failure to state a claim under Rule 12(b)(6).[62] The Company Defendants raise failure to state a claim under Rule 12(b)(6) as well as failure to name an indispensable party under Rule 12(b)(7).[63] CST "adopts and incorporates by reference" the Company Defendants' arguments under Rule 12(b)(7) per their opening brief.[64]

### A. Personal Jurisdiction Over CST

CST raises as a predicate issue whether this court has personal jurisdiction over it under Rule 12(b)(2). "Plaintiffs have the burden to make out a *prima facie* case establishing jurisdiction over a non-resident."[65] In considering a motion to dismiss under Rule 12(b)(2), I am not restricted to considering merely the allegations contained in the Complaint,[66] and I may consider "extra-pleading material," such as affidavits and briefs, to make my ultimate determination.[67]

---

[62] *See generally* CST OB.
[63] *See generally* Company Def. OB.
[64] CST OB 5 n.6.
[65] *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 974 (Del. Ch. 2000) (citing *Hart Holding Co. v. Drexel Burnham Lambert Inc.*, 593 A.2d 535, 539 (Del. Ch. 1991)).
[66] *Hart Holding Co.*, 593 A.2d at 538–39.
[67] *Crescent*, 846 A.2d at 974.

To establish jurisdiction over CST, the Plaintiffs must have pled specific facts rather than relying on "conclusory assertions," but the record is still construed in the light most favorable to the Plaintiffs.[68]

The Plaintiffs have, in their answering brief, identified two avenues via which they claim this Court has jurisdiction over CST: (1) they contend CST is bound by the forum selection clauses contained in the Merger Agreement and LOT; and (2) they contend CST is subject to the Court's jurisdiction under Delaware's long-arm statute.[69]

If, per avenue (1), CST has consented to jurisdiction via contract, no due process analysis is required, and the party is treated as if it has expressly consented to personal jurisdiction.[70] If, per avenue (2), personal jurisdiction is predicated on a Delaware statute, then the Court must also conduct a constitutional due process analysis by applying the minimum contacts test.[71]

---

[68] *Mobile Diagnostic Grp. Holdings, LLC v. Suer*, 972 A.2d 799, 802 (Del. Ch. 2009) (citing *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2737409, at *5 (Del. Ch. July 14, 2008)).
[69] Pls.' Answering Br. Opp'n Defs.' Mots. to Dismiss Verified Am. Compl. 30–38, Dkt. No. 23 [hereinafter "AB"].
[70] *See Neurvana Med., LLC v. Balt USA, LLC*, 2019 WL 4464268, at *3 (Del. Ch. Sept. 18, 2019).
[71] *See Hazout v. Tsang Mun Ting,* 134 A.3d 274, 278 (Del. 2016).

1. <u>Personal Jurisdiction by Contract</u>[72]

The Plaintiffs assert that CST is bound by the forum selection clauses in either the Merger Agreement or the LOT, which require litigation in Delaware. However, CST is not a party to the Merger Agreement, and is not a signatory to the LOT.

The Plaintiffs respond that the forum selection clauses in the Merger Agreement and LOT can be imputed into the PAA, to which CST *is* a party, because the PAA attaches the LOT as an exhibit.[73] The LOT in turn attaches the Merger Agreement as an exhibit.[74]

This argument is unconvincing with respect to the Merger Agreement for at least two reasons. First, as mentioned above, CST is not a party to the Merger Agreement, and the parties have not identified any language in the PAA that specifically "incorporate[s] by reference" the terms of the Merger Agreement (though the Plaintiffs have argued that the Merger Agreement is, in fact, incorporated by reference into the PAA).[75] Second, the PAA contains a provision

---

[72] Importantly, my assessment, below, of contracts associated with the Merger is limited to a discussion of whether personal jurisdiction exists over CST here. I make no finding as to whether CST has some, or any, contractual duties arising from the Merger Agreement, the PAA, or the LOT. I similarly make no finding as to whether CST has any fiduciary duties arising from its role as paying agent, as enshrined in contract. Again, this assessment deals solely with the predicate question of whether or not it is appropriate to subject CST to this Court's jurisdiction.

[73] *See* PAA, at Ex. A.

[74] LOT, at Ex. A.

[75] *Town of Cheswold v. Cent. Del. Bus. Park*, 188 A.3d 810, at 818–19 (Del. 2018) (internal quotations omitted) ("Other documents or agreements can be incorporated by reference where a contract is executed which refers to another instrument and makes the conditions of such other instrument a part of it . . . . But . . . to incorporate one document into another, an explicit manifestation of intent is required."); *see also* AB 30. A fact also of some import is that, while the

expressly denying that CST is bound by any of the provisions of the Merger Agreement:

> Parent acknowledges that the Paying Agent is not a party to the Merger Agreement and *as such is assumed to be wholly unfamiliar with, and not bound by, the terms contained therein.* The rights and obligations of the Paying Agent shall be governed solely by the provisions of this [Paying Agent] Agreement.[76]

Thus, the Merger Agreement's forum selection clause cannot subject CST to personal jurisdiction in Delaware.

This argument is also unsuccessful with respect to the LOT for similar reasons. The LOT is only executed by the "Securityholder" per its terms and CST is thus not a "party" thereto.[77] Similarly to the Merger Agreement, the PAA does not contain an "explicit manifestation of intent" to incorporate the LOT by reference (though the Plaintiffs argue that it is in fact incorporated).[78] And finally, the LOT itself does not actually constitute a contract.[79] Without more, I cannot find that CST

---

Merger Agreement was ultimately attached to the PAA, it was an exhibit to an exhibit (and the question of whether CST saw the full gambit of exhibits prior to closing would almost certainly be a disputed issue; the CST declaration indicates that they did in fact *not* see the Merger Agreement before this litigation began). *See* Nelson Decl. ¶ 4; *see also* PAA, Ex. A, at Ex. A.

[76] PAA § 1.3 (emphasis added).

[77] *See generally* LOT. I do note that Section 11 of the LOT, which includes the forum selection clause, references the term "Party"; however, such term is apparently undefined. *See id.* at 4–5; *see generally* LOT. Moreover, introductory language prefacing the numbered paragraphs reads: "In connection with the surrender of the above-described certificates, *the Securityholder* agrees as follows:", indicating that the following provisions bind purely the holder surrendering its shares. *See id.* at 4 (emphasis added).

[78] *See generally* PAA; *Town of Cheswold*, 188 A.3d at 818–19.

[79] *See, e.g.*, *Cigna Health & Life Ins. Co. v. Audax Health Sols., Inc.*, 107 A.3d 1082, 1088–91 (Del. Ch. 2014) (determining that the letter of transmittal lacked consideration and therefore was not an enforceable contract); *Roam-Tel Partners v. AT&T Mobility Wireless Operations Holdings Inc.*, 2010 WL 5276991, at *6 (Del. Ch. Dec. 17, 2010) (finding, in the context of appraisal, that

has consented to personal jurisdiction in Delaware by dint of contractual arrangement. It is not dispositive, but is worthy of note, that CST is a New York domiciliary and, with respect to the one contractual document to which it is indisputably bound, the PAA, did not submit to Delaware jurisdiction but apparently bargained for the application of New York law.[80]

## 2. Personal Jurisdiction by Statute

The Plaintiffs also argue that Delaware's long-arm statute provides for jurisdiction over CST.[81] If so, they will also need to show that CST has sufficient minimum contacts with Delaware such that maintaining jurisdiction over CST here would not offend due process.[82]

Delaware's long-arm statute (the "Long-Arm Statute") allows a Delaware court to exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent "[t]ransacts any business or performs any character of work or service in the State."[83]

The Plaintiffs identify this subsection of the Long-Arm Statute as the basis for personal jurisdiction, arguing that the PAA required CST to effectuate the Merger between two Delaware companies in part by collecting stock certificates

---

there was no consideration for a stockholder's "alleged promise to accept the merger consideration," and therefore no valid contract was formed).

[80] *See supra* note 40 and accompanying text.
[81] 10 *Del. C.* § 3104; *see also* AB 35.
[82] *Neurvana*, 2019 WL 4464268, at *2 (citations omitted).
[83] 10 *Del. C.* § 3104(c)(1).

(metaphysically based in Delaware) for the purpose of cancelling them.[84]   They allege that, because cancelling stock certificates requires the filing of a Certificate of Amendment with the Delaware Secretary of State, CST transacted business in Delaware for purposes of the Long-Arm Statute.[85]   The Complaint does not specifically aver that CST actually filed a Certificate of Amendment, however.[86]   In response, CST's President has filed a declaration stating that every action CST took in connection with the Merger occurred within the State of New York, including the payment of funds and communications relating to the payments.[87]   That same declaration verified that CST has never entered into any contract requiring it to act in Delaware, including selling products, transacting business, or performing "any other services" in Delaware.[88]

At this stage, I am required to draw all inferences in favor of the Plaintiffs.[89] Caselaw supports the theory that, if CST indeed sent a Certificate of Amendment to be filed in Delaware, they would have "directly transacted business in Delaware for purposes of Section 3104(c)(1)."[90]   The CST declaration—which I am permitted to

---

[84] AB 37; *see also* PAA § 2.7.
[85] AB 37.
[86] *See generally* Compl.
[87] Nelson Decl. ¶ 6.
[88] *Id.* ¶ 9.
[89] *Sample v. Morgan*, 935 A.2d 1046, 1056 (Del. Ch. 2007) (citation omitted).
[90] *See, e.g., id.* at 1057 (citing *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 2005 WL 583828, at *6, *8 (Del. Ch. Feb. 4, 2005); then citing *Gibralt Cap. Corp. v. Smith*, 2001 WL 647837, at *6 (Del. Ch. May 9, 2001)); *Hartsel v. Vanguard Grp., Inc.*, 2011 WL 2421003 (Del. Ch. June 15, 2011)

consider given the procedural posture of this motion[91]—suggests no such filing was made, though it does not *precisely* aver that CST did not make a filing with Delaware.[92]  I need not directly resolve this issue, though, for I find in any event that minimum contacts do not exist here so as to make exercise of personal jurisdiction over CST appropriate.

*Ohrstrom v. Harris Trust Company of New York* is instructive.[93]  This Court of Chancery case dealt with an almost identical question of personal jurisdiction— whether Delaware had personal jurisdiction that ought to extend over the Harris Trust Company of New York, a New York corporation acting as a transfer agent, exchange agent and stock registrar for two Delaware corporations.[94]  In that case, due to certain bookkeeping difficulties, Harris Trust registered certain previously issued shares, causing a share over-issue of 10,954 surplus shares, then cancelled approximately 4,600 shares to remedy the over-issuance.[95]  The plaintiffs in *Ohrstrom* argued that Harris Trust was really acting as the alter ego of a Delaware

---

("Plaintiffs do not assert, however, that any Individual Defendant took any tangible action in Delaware, such as . . . filing or helping to file any document in the State . . . .").

[91] *Crescent*, 846 A.2d at 974.

[92] *See id.* (citing *Hart Holding Co.*, 593 A.2d at 539) ("All allegations of fact concerning personal jurisdiction are presumed true, unless contradicted by affidavit.")

[93] *Ohrstrom v. Harris Tr. Co.*, 1998 WL 8849 (Del. Ch. Jan. 8, 1998).

[94] *Id.* at *1.  Harris Trust worked in different capacities for the two different Delaware entities.  *See id*.

[95] *Id.*

corporation, and therefore the Long-Arm Statute ought to reach Harris Trust (and due process would not be offended by its doing so).[96]

The Court disagreed.[97] It declined to find that Harris Trust was the "alter ego" of any Delaware corporation, citing the "unalterable fact" that Harris Trust transferred and registered shares from its New York offices, and that therefore it did not conduct business in Delaware.[98] The Court further opined that, even if the Long-Arm Statute were satisfied, the plaintiffs' arguments for due process would have failed, as Harris Trust had never had "continuous and systematic general business contacts with Delaware," and Delaware had no especial interest in adjudicating a dispute between the plaintiffs and the transfer agent, as it was "merely a commercial dispute."[99] Further, Harris Trust had not purposely "availed itself" of the laws of Delaware by entering a contract to perform transfer agent duties for a Delaware corporation.[100] The only connection between Harris Trust and Delaware was the fact that the pertinent corporations were incorporated in Delaware.[101]

---

[96] *Id.* at *2.
[97] *Id.*
[98] *Id.* at *3. In support, the opinion also cites the fact that Harris Trust had no place of business in Delaware, no telephone number in Delaware, no post office box or mailing address in Delaware, and no agent for service of process in Delaware. *See id.* CST's declaration avers the same, except that it does not disavow having an agent for service of process in Delaware. *See generally* Nelson Decl.
[99] *Ohrstrom*, 1998 WL 8849, at *5 (internal quotations omitted).
[100] *See id.*
[101] *Id.*

Much of this analysis is on point here. CST has submitted evidence that it conducted all of its activities as paying agent from its offices in New York, and that the contract retaining its services selected New York as its governing law and directed notice to CST in New York.[102] Furthermore, CST has indicated that it does not maintain any facility, property, or separate business in Delaware, has not held any physical meetings of its board of directors or shareholders in Delaware, has not entered into any contract requiring it to perform services in Delaware, and has never had any telephone number, mailing address or bank account in Delaware.[103] To the extent there is any connection between CST and Delaware, it is due to its contract with Parent, a Delaware corporation. This, as in *Ohrstrom*, is insufficient to confer personal jurisdiction over CST, as it fails to establish business connections between *the agent* and *the State of Delaware*.[104] The nature of the contract, being a commonplace commercial contract, embodying New York law, bolsters this conclusion, as the action does not seek to vindicate Delaware-specific law.[105]

---

[102] *See* Nelson Decl. ¶¶ 6–7.

[103] *See id.* ¶¶ 8–10.

[104] *See Ohrstrom*, 1998 WL 8849, at *5; *see also Hartsel*, 2011 WL 2421003, at *14 (finding that due process would have been offended had personal jurisdiction been exercised over the defendants under similar circumstances).

[105] *See Ohrstrom*, 1998 WL 8849, at *5; *see also BAM Int'l, LLC v. MSBA Grp. Inc.*, 2021 WL 5905878, at *10 (Del. Ch. Dec. 14, 2021).

CST's motion to dismiss for lack of personal jurisdiction should be granted. Because I so find, I do not reach the question of whether the Plaintiffs have stated a viable claim against CST.

*B. The Company Defendants' 12(b)(6) Argument*

The standard applicable to a Rule 12(b)(6) motion for failure to state a claim is as follows: (1) all well-pled factual allegations are accepted as true; (2) even vague allegations are well-pled if they put the opposing party on notice of the claim; (3) the Court draws all reasonable inferences in favor of the non-moving party; and (4) dismissal is only appropriate where the Plaintiffs are not entitled to recover under "any reasonably conceivable set of circumstances susceptible of proof."[106]

### 1. Breach of Contract Theory

This amended Complaint pushes the Court to the limits of the leniency inherent in the modern doctrine of notice pleading. The Plaintiffs have pled in their first cause of action in the Complaint a breach of contract theory against Parent. Certain paragraphs of this count have been reproduced below:

> 72. The Merger Agreement, its associated and/or incorporated agreements, forms and instructions, and Plaintiffs' Written Consent and Agreement of Stockholders are valid and enforceable contracts.
> . . .
> 75. Instruction 4(a) of the Letter of Transmittal, which was promulgated pursuant to Section 3.3(i) of the Merger Agreement, required Tassel Parent and its agents to obtain a Medallion Guarantee before wiring Merger consideration to a name different than that on the relevant stock certificates.
> . . .

---

[106] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (citations omitted).

> 77. Tassel Parent's agents H&K and Continental willfully failed to comply with the unambiguous terms of the [LOT], and transferred Plaintiffs' share of the Merger consideration to the Hackers' Chinese account without obtaining a Medallion Guarantee.[107]

As mentioned briefly above, the LOT is not a contract. The LOT represents, pertinently, a procedural device for assigning payment, by CST to stockholders. Parent was not a signatory or party to the LOT. Parent's duties are defined in the Merger Agreement negotiated with Target, by the Paying Agent Agreement, and by Section 251 of the Delaware General Corporation Law.[108] Delaware caselaw supports the finding that the LOT itself is not an enforceable contract; the Court of Chancery addressed this issue squarely[109] in *Cigna Health and Life Insurance Company v. Audax Health Solutions, Inc.* in 2014.[110] Cigna argued that there was a lack of consideration affiliated with the applicable letter of transmittal, and therefore the basic elements of an enforceable contract (offer, acceptance, consideration) were not satisfied.[111] Cigna's theory was that payment of the merger consideration was a "pre-existing duty" that did not stem from the letter of transmittal, but was a statutory

---

[107] *See* Compl. ¶¶ 72, 75, 77 (emphasis added).
[108] I note that the Plaintiffs have not asserted a statutory claim under Section 251. 8 *Del C.* § 251.
[109] I note that the issue in *Cigna* was whether the LOT imposed contractual *duties* on its signatory stockholders; here, the issue is whether the LOT imposes rights on the stockholders, and duties upon the non-signatory Parent. *See generally* 107 A.3d 1082 (Del. Ch. 2014).
[110] *See id.*
[111] *Id.* at 1088.

right under Section 251 following the consummation of the merger.[112]  The Court agreed.[113]

*Cigna* relied on *Roam-Tel Partners v. AT&T Mobility Wireless Operations Holdings Inc.*, a 2010 Chancery case which similarly held that in the context of an appraisal, a stockholder's return of a letter of transmittal did not constitute a binding and enforceable contract because of a lack of consideration.[114]

The Plaintiffs have pled that the "Merger Agreement, its associated and/or incorporated agreements, *forms and instructions*," which presumably encompasses the LOT, were valid and enforceable contracts,[115] but I am not required to accept this, as the statement is a legal conclusion rather than a recitation of fact.[116]  Given that there is no consideration associated with the LOT, unless its terms were adopted in a separate agreement, it did not create duties enforceable in contract.  In any event, the Plaintiffs have failed to explain how the LOT bound Parent.  It is of course true that a contract can incorporate the terms of a non-contractual document, though as discussed above, finding that such incorporation has occurred requires an explicit manifestation of intent.[117]  But Parent is not charged in the Complaint with breach

---

[112] *Id.* at 1088–89.
[113] *Id.* at 1091.
[114] 2010 WL 5276991, at *6 (Del. Ch. Dec. 17, 2010).
[115] Compl. ¶ 72 (emphasis added).
[116] And in the remainder of this discussion, I make no finding as to whether the LOT, the Merger Agreement, and the PAA are or are not incorporated into one another, or any variation on that fact pattern.
[117] *See supra* notes 75–78 and accompanying text.

of the PAA.[118]  As the quoted portion of the Complaint, above, makes clear, the Plaintiffs allege that Parent is liable for breach of the LOT *by its agents*, H&K and CST.[119]  But vicarious liability does not attach for a non-tortious breach of contract, as I explain below.  The Plaintiffs' arguments are predicated on the assumption that Parent must be responsible for CST's acts under an agency law theory, and that *CST's* acts breached the LOT.  Although they fail to make the argument explicit in the Complaint, the Plaintiffs in briefing and argument attempt to allege that Parent's agents breached *other* contractual provisions as well, including provisions in the PAA.[120]  However, assuming—which I do for purposes of this analysis—that an agency relationship existed between principal Parent, agent CST, and non-party H&K, the theory of vicarious liability in Delaware caselaw does not extend to breach of contract.[121]  This issue was addressed in *Wenske v. Blue Bell Creameries, Inc.*, in which the Court of Chancery found that "Delaware law recognizes no theory under which a principal can be vicariously liable for its agent's non-tortious breach of contract."[122]  The *Wenske* court, providing additional clarification on its finding

---

[118] Compl. ¶¶ 70–79.
[119] *Id*. ¶ 77.
[120] AB 24–26; *see also* Oral Arg., 71:3–15 (stating that CST was required, under the PAA, to ensure the medallion guarantee was complied with).
[121] 2018 WL 3337531, at *16 (Del. Ch. July 6, 2018).
[122] *Id.* at *16, *16 n.132 (collecting cites).  The *Wenske* opinion collected cites based on civil conspiracy and ultimately summarized its finding as follows: "[t]hat is, if '[c]ivil conspiracy [liability] is vicarious liability,' . . . and a non-tortious 'breach of contract . . . can[not] give rise to a civil conspiracy claim,' . . . it follows that a non-tortious breach of contract cannot give rise to vicarious liability."  *Id.* at n.132 (citing *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL

25

following a motion for reargument, pointed to the Restatement (Third) of Agency as support for the proposition that "a principal may be liable for torts committed by an agent . . . where the agent's tortious conduct is undertaken pursuant to the agency relationship."[123] That section of the Restatement does not posit contractual liability befitting the scenario at hand, however, and "Delaware follows the Restatement of Agency."[124]

The Plaintiffs' contract claims against Parent for its agents' breach of the LOT (or the PAA) fail.[125] My analysis does not end there, however.

The Merger Agreement imposes duties on Parent, and it is reasonably conceivable that it also provides rights to the Plaintiffs (as third-party beneficiaries) here. The Plaintiffs' "First Cause of Action (Breach of Contact—against Tassel Parent)" recites generally that the Merger Agreement entitles Parent to receive the

---

2130607, at *11 (Del. Ch. Aug. 26, 2005); then citing *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 35 (Del. Ch. 2009); and then citing *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 892 (Del. Ch. 2009)). In a later opinion addressing a motion for reargument, the *Wenske* court clarified that its discussion of civil conspiracy liability was predicated on the fact that civil conspiracy liability is a *species* of vicarious liability and was therefore instructive with respect to the broader genus of vicarious liability. *See Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 5994971, at *3 n.26 (Del. Ch. Nov. 13, 2018). At least one Delaware Superior Court opinion has followed the *Wenske* court's holding. *See B&B Fin. Servs., LLC v. RFGV Festivals, LLC*, 2019 WL 5849770, at *3 (Del. Super. Ct. Nov. 7, 2019).

[123] *Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 5994971 (citing RESTATEMENT (THIRD) OF AGENCY § 7.03 (2006)).

[124] *Wenske,* 2018 WL 5994971, at *4 n.32 (citing *Pisano v. Del. Solid Waste Auth.*, 2006 WL 3457686, at *9 (Del. Ch. Nov. 30, 2006)) (internal quotations omitted).

[125] Notably, the Plaintiffs *did* plead a tort claim against CST, though they chose *not* to plead a vicarious liability claim against Parent, CST's principal, associated with the tort. The Complaint fails to allege that Parent is liable by reason of CST's negligence via the doctrine of vicarious liability.

Plaintiffs' stock (and note) "in exchange for payment as set forth in the Merger Agreement,"[126] and further that the Plaintiffs had complied with the conditions precedent in order to receive Merger consideration, and became "*automatically entitled* to receive their pro rata portion of the Merger consideration . . . pursuant to Section 3.3(i) of the Merger Agreement . . . ."[127]

That Section of the Merger Agreement includes a provision explaining the conditions precedent for consideration to be paid, to which the Plaintiffs cite in averring that they have met those conditions precedent.[128] Once that happens, under Section 3.3(i), the stockholder is "entitled" to receive the Merger consideration.[129] The Section goes on to explain the duties of Parent thereafter: to pay the sum due to each such compliant stockholder to *the Paying Agent*.[130] Per the Complaint, it appears that both the Plaintiffs' conditions precedent to payment *and* Parent's payment obligation were completed.[131] Read holistically, is it reasonably conceivable that the Merger Agreement imposes an obligation on Parent to do more than make a payment to its agent, that is, to ensure payment to the "entitled" stockholders and noteholders? The language can be read that way, so the answer at the pleading stage is "yes."

---

[126] Compl. ¶ 71.
[127] *Id.* ¶ 73 (emphasis added).
[128] *See* MA § 3.3(i).
[129] *Id.*
[130] *See id.* (emphasis added).
[131] *See* Compl. ¶¶ 35–36.

27

The more difficult question remains: in light of the Plaintiffs' pleading, basing liability of Parent specifically (and unsuccessfully) on a vicarious breach of the LOT, have the Plaintiffs nonetheless generally stated a breach of contract claim against Parent for breach of the Merger Agreement? Delaware is a notice pleading jurisdiction, and our Supreme Court has instructed that, in the particular context of pleading a breach of contract case, a plaintiff can make out a sufficient claim "if [the complaint] contains 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"[132] Specific facts need not be pled in order to make out an "actionable claim," and assessment of the stated claim should be "liberally construed" so long as the defendant has "fair notice" of the claim.[133] Upon review of the entire Complaint, as well as the language of the first cause of action, referring generally to breach of all pertinent agreements and specifically citing Section 3.3(i) of the Merger Agreement, I find that the Complaint gives sufficient notice to Parent that it is being sued for failure to pay over the Merger consideration due the Plaintiffs in violation of the Merger Agreement.[134] Accordingly, Parent's motion to dismiss the first cause of action for breach of contract is denied.

---

[132] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 611 (Del. 2003) (citation omitted).
[133] *See id.*; *see also In re Infousa, Inc.*, 2007 WL 3325921, at *26 (Del. Ch. Aug. 13, 2007) ("Rule 8(a) does not demand, however, that plaintiffs present a paragon of the well-organized complaint.").
[134] *See Wood v. Rodeway Inn*, 2015 WL 994855, at *2 (Del. Super. Ct. Mar. 4, 2015) ("Although the sparseness of Plaintiffs' pleading is readily apparent, their Complaint, barely, meets Delaware's notice pleading standard.").

## 2. Unjust Enrichment Theory

The Plaintiffs have pled an unjust enrichment claim against the Company Defendants.[135] Unjust enrichment occurs where there is an "unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."[136]

The elements of an unjust enrichment claim are as follows: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."[137]

It is difficult to see how Parent can have liability apart from breach of contract here. However, mindful of the alternative nature of the claims, I repeat my recent holding in *Lockton v. Rogers*, bow under the weight of precedent, and decline to dismiss the unjust enrichment claim against the Company Defendants at this time.[138]

Accordingly, the Company Defendants' motion to dismiss is denied, and the equitable claim is left for consideration on a record.

---

[135] *See* Compl. ¶¶ 80–86. This claim is pled in the alternative to the first cause of action, the breach of contract claim against Parent, but this claim is also levied against Graduation Alliance. *See id.*
[136] *Nemec v. Shrader,* 2009 WL 1204346, at *6 (Del. Ch. Apr. 30, 2009), *aff'd*, 991 A.2d 1120 (Del. 2010) (citation omitted).
[137] *Nemec v. Shrader,* 991 A.2d 1120, 1130 (Del. 2010).
[138] *See Lockton v. Rogers,* 2022 WL 604011, at *16–17 (Del. Ch. Mar. 1, 2022).

*C. The Company Defendants' 12(b)(7) Argument*

The Company Defendants have moved to dismiss for failure to join H&K, allegedly a necessary party here. I expect that, having dismissed CST on jurisdictional grounds, this argument should be supplemented regarding CST before consideration. Accordingly, consideration of this issue is continued.

### III. CONCLUSION

I have found above that the Complaint does not *prima facie* prove personal jurisdiction over CST; CST's motion to dismiss is accordingly GRANTED. The Company Defendants' motion to dismiss is DENIED IN PART and CONTINUED IN PART. The parties should provide an appropriate form of order.

# EXHIBIT A

